UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ADAM PLOTCH,

        Plaintiff,

- against -

WELLS FARGO BANK, N.A.,

        Defendant.
-------------------------------------------------------------x

OPINION & ORDER

No. 17-CV-00309 (NG) (RER)

GERSHON, United States District Judge:

      This case arises from two separate state foreclosure actions as to the same property located at 387 Adelphi Street in Brooklyn (the "property").[1] One of the foreclosure actions was instituted by Wells Fargo Bank, N.A. ("Wells Fargo") against Philip McKenzie. The other, earlier foreclosure action was commenced by a condominium board against Philip McKenzie for his having failed to pay common charges on the property. Plaintiff, Adam Plotch, purchased the property in the foreclosure action commenced by the condominium board, but was never a party to the foreclosure action initiated by Wells Fargo. Plaintiff brings this federal action seeking various forms of declaratory relief. Defendant has now moved to dismiss the complaint on three grounds: (1) pursuant to the doctrine set forth in *Younger v. Harris*, 401 U.S. 37 (1971), the court should abstain from exercising its jurisdiction over plaintiff's claims; (2) plaintiff's claims are barred by collateral estoppel; and (3) plaintiff's complaint fails to state a claim. For the reasons

---

[1] Diversity jurisdiction exists here because plaintiff is a citizen of New York and defendant is a citizen of South Dakota. In an action seeking a declaratory judgment, "the amount in controversy is measured by the value of the object of the litigation," which, here, exceeds $75,000. *Garanti Finansal Kiralama A.S. v. Aqua Marine & Trading Inc.*, 697 F.3d 59, 69 (2d Cir. 2012).

set forth below, defendant's motion is granted, but plaintiff may move for leave to amend his complaint to address the deficiencies.

I.  **Facts**

The complaint alleges the following facts which, for purposes of this motion, are taken as true. On July 23, 2001, the property was conveyed from Lazarine Quarless to Philip McKenzie. On August 20, 2001, McKenzie executed a mortgage in the amount of $247,500 ("2001 Mortgage") in favor of Wells Fargo. This mortgage was recorded in the New York City register. On July 28, 2003, McKenzie executed another mortgage to Wells Fargo in the amount of $6,187.06 ("2003 Gap Mortgage"). Simultaneously with the execution of the 2003 Gap Mortgage, Wells Fargo recorded a "Consolidated, Extension and Modification Agreement" to consolidate the 2001 Mortgage with the 2003 Gap Mortgage ("2003 CEMA"). The 2003 CEMA was in the amount of $248,071.00. A copy of the 2003 CEMA was recorded in the New York City register on July 28, 2003. On July 26, 2005, McKenzie executed another mortgage on the property in the amount of $101,088.51 in favor of Wells Fargo ("2005 Gap Mortgage"). The 2005 Gap Mortgage was recorded in the New York City register on the same date. Simultaneously with the recording of the 2005 Gap Mortgage, Wells Fargo recorded a second "Consolidated, Extension and Modification Agreement" (the "2005 CEMA"). The 2005 CEMA states that "[t]he Consolidated Note will supersede all terms, covenants, and provisions of the Notes," and it was recorded in the New York City register. Within the 2005 CEMA is a "Consolidated Mortgage" in the amount of $342,000, which consolidates all of the above noted mortgages ("2005 Consolidated Mortgage").

On October 31, 2012, plaintiff purchased the property for $100,000 at a foreclosure action commenced by the condominium board as the result of McKenzie's failure to pay common

2

charges. Compl. at ¶¶ 41-42.[2] On October 2, 2015, a referee's deed transferring title to the premises to plaintiff was recorded in the New York City register. Plaintiff alleges that the above mortgages are defective in various ways. For example, some acknowledgment pages are devoid of any identification as to the notary witnessing McKenzie's purported signature. Others lack McKenzie's initials on pages of documents that require initials.

Plaintiff argues that, because the above mortgages were deficiently executed, Wells Fargo's interests "should be subordinate to the rights of Plaintiff." Compl. at ¶ 59. Plaintiff seeks: the cancellation of the 2005 Gap Mortgage (or a declaration that his rights are superior to those of Wells Fargo); the cancellation of the 2003 CEMA and 2003 Gap Mortgage (or a declaration that his rights are superior to those of Wells Fargo); and a declaratory judgment that the 2001 note is satisfied and discharged. Plaintiff seeks no specific relief as to the 2005 CEMA or the 2005 Consolidated Mortgage.

## II. The 2013 State Court Proceeding

On January 22, 2013, Wells Fargo initiated a foreclosure action in Kings County against McKenzie to foreclose on the 2005 Consolidated Mortgage. Plotch was not named as a party. McKenzie ultimately defaulted in that action. On October 11, 2016, Plotch filed a motion, purportedly as McKenzie's successor in interest, pursuant to New York Civil Practice Law and Rule ("CPLR") § 1018, seeking to dismiss the state court action. Wells Fargo opposed this motion. The state court denied Plotch's motion on February 9, 2017. The order stated, "following oral argument . . . non-party's motion to substitute into the action is denied pursuant to [New York Civil Practice Law and Rule] 1018. Furthermore, to the extent that the motion is made pursuant

---

[2] At oral argument, plaintiff acknowledged that he took the property subject to Wells Fargo's superior liens. Though plaintiff challenges the validity of those liens here, to the extent they are valid, plaintiff acknowledges that those liens are superior.

3

to CPLR 1012, the motion is denied as untimely."[3]  In that same order, the state court granted Wells Fargo's motion for an order of reference, and the foreclosure case was sent to a referee. On May 9, 2017, Plotch moved for reconsideration. This motion is still pending. *See Wells Fargo v. Philip McKenzie*, No. 0001243/2013 (N.Y. Sup. Ct., Kings County).

## III. Discussion

### A. *Younger* Abstention

Defendant argues that I should abstain from exercising jurisdiction pursuant to *Younger v. Harris*, 401 U.S. 37 (1971). In *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584, 591 (2013), the Supreme Court clarified that *Younger* applies only in three "exceptional" circumstances: (1) state criminal prosecutions; (2) civil enforcement proceedings; and (3) civil proceedings that implicate a state's interest in enforcing the orders and judgments of its courts. *Id*. at 588.

Courts have routinely concluded that a pending state court foreclosure proceeding falls within the third category articulated in *Sprint*—a civil proceeding that implicates a state's interest in enforcing the orders of its courts. *See Calizaire v. Mortg. Elec. Reg. Systs., Inc.*, 2017 WL 895741, at *3 (E.D.N.Y. Mar. 6, 2017) (collecting cases). However, *Younger* generally does not apply against those not party to the pending state proceedings. *See Doran v. Salem Inn, Inc.*, 422 U.S. 922, 929 (1975); *Hindu Temple Society of North Am. v. Supreme Court of State of New York*, 335 F. Supp. 2d 369, 375 (E.D.N.Y. 2004). Only "where the plaintiffs' interests are so inextricably intertwined that direct interference with the state court proceeding is inevitable, *Younger* may extend to bar the claims of plaintiffs who are not party to the pending state proceeding." *Spargo*

---

[3] CPLR § 1012 governs intervention in an action while CPLR § 1018 governs substitution into an action.

4

*v. New York State Commission on Judicial Conduct*, 351 F.3d 65, 82 (2d Cir. 2003) (internal quotation omitted).

Defendant fails to offer any argument as to why the interests of plaintiff and McKenzie are so intertwined that an exception to the general rule—that *Younger* is inapplicable to non-parties—is proper in this case. *See Roberts v. New York*, 911 F. Supp. 2d 149, 169 (N.D.N.Y. 2012) (declining to apply *Younger* because "defendants have failed to demonstrate that plaintiffs' interests are so closely related that abstention is warranted."). Obviously, they are not. McKenzie has defaulted, whereas Plotch's interest is to stop Wells Fargo's attempt to foreclose on the property. As the Ninth Circuit has articulated:

> The district court properly declined to abstain under *Younger*. [Defendant] initially named Plaintiffs as parties in the [state court] action but unilaterally dismissed them. [Defendant] did so precisely because of Plaintiffs' effort to fight—that is, to present a defense in state court. *Younger* abstention cannot apply to one who is a stranger to the state proceeding. [Defendant] made Plaintiffs strangers to the state case by denying them an opportunity to be heard in state court on the question . . . Moreover, as parties dismissed from the state case, Plaintiffs' interests are not intertwined with those against whom the Order was issued . . . The question Plaintiffs raise in this case . . . arose precisely because Plaintiffs were dismissed from the state court litigation and so could not defend against the imposition of an injunction on them in that litigation. Those covered by name by the [state court] Order did not attempt to present a defense and were not dismissed from the litigation. The circumstances and interests of those covered by name in the [state court] Order and the Plaintiffs are therefore entirely divergent as to the procedural issues raised here.

*Vasquez v. Rackauckas*, 734 F.3d 1025, 1035 (9th Cir. 2013) (internal quotations omitted). This case is similar to *Vasquez* in two respects. First, Plotch is a stranger to the state court proceeding because Wells Fargo successfully opposed his substitution into the action. None of the cases relied upon by defendant involve a federal court declining to exercise jurisdiction based upon a state court foreclosure proceeding where the plaintiff in the federal proceeding is not a party to the state court action. Second, McKenzie did not present a defense in state court, as he defaulted. In effect, defendant successfully argued against plaintiff's participation in the state court action and now

seeks to block plaintiff's avenue to federal court by saying that the state proceeding afforded plaintiff an adequate opportunity for judicial review. It did not.

I also reject defendant's contention that the state court has already provided plaintiff with an opportunity to be heard and has adjudicated the defenses plaintiff seeks to raise here. The state court denied both substitution under CPLR § 1018 and intervention under CPLR § 1012. Nothing in the state court's decision suggests that it resolved plaintiff's claims on the merits. Indeed, plaintiff's state court motion does not even raise the claims he raises in the current action.

Accordingly, I decline to invoke *Younger* abstention.

**B.     Collateral Estoppel**

"Relitigation of an issue of fact or law is precluded on the basis of collateral estoppel if (1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Bulovic v. Stop & Shop Supermarket Co., LLC*, 698 Fed. Appx. 21, 22 (2d Cir. 2017) (internal quotation omitted). Defendant argues that "the state court has effectively disposed of any claims and defenses Plotch might have with respect to the Property when it denied Plotch's motion to intervene and dismiss the Foreclosure Action." Def. Mem. at 11. Plotch was never permitted to intervene or substitute into the state court action, so, not having been part of that action, he did not have an opportunity to fully and fairly litigate substantive issues. Moreover, the state court opinion does not discuss any of these substantive issues, which indicates that the resolution of the

issues Plotch raises here were not necessary to support a decision in the state court. Accordingly, this action is not barred by collateral estoppel.[4]

## C. Failure to State a Claim

Defendant also moves to dismiss for failure to state a claim. In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all well-pleaded factual allegations and must draw all inferences in plaintiff's favor. *Swiatkowski v. Citibank*, 446 Fed. Appx. 360, 360-61 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The first issue to resolve as to the merits of plaintiff's claim is whether the 2005 Consolidated Mortgage is the only relevant mortgage. In other words, assuming *arguendo* that the mortgages issued prior to the 2005 Consolidated Mortgage were defective in the way plaintiff alleges, do those defects matter in light of the 2005 Consolidated Mortgage? Plaintiff argues that, if any of the underlying mortgages were defective, then the value of those defective mortgages should be subtracted from the lien Wells Fargo holds on the property. Wells Fargo argues that the 2005 Consolidated Mortgage supersedes the prior mortgages and is the only mortgage relevant to the foreclosure.

Wells Fargo is correct that the 2005 Consolidated Mortgage supersedes the prior mortgages and is the mortgage critical to the rights of the parties. The 2005 CEMA states that "[t]he

---

[4] Defendant also argues that plaintiff has a remedy by way of his pending appeal and/or motion for reconsideration. If one of those remedies is successful, and plaintiff is allowed to be heard in state court, then an abstention motion may become viable.

Consolidated Note will supersede all terms, covenants, and provisions of the Notes." *See* Compl. Ex. C at 5. It also states that "all of the Lender's rights in the Property are combined so that under the law Lender has one mortgage and I [borrower] have one loan obligation which I will pay as provided in this Agreement." *Id*.[5]

In support of its argument, Wells Fargo points to another case in which plaintiff was a party and attempted to advance a similar argument, which the New York Court of Appeals rejected. *See Plotch v. Citibank, N.A.*, 27 N.Y.3d 477, 483-84 (2016). In that case, there was a consolidated mortgage comprised of two underlying mortgages. The first mortgage had been issued in the amount of $54,000, and the second mortgage in the amount of $38,000. These mortgages were consolidated into one mortgage of $92,000. Plotch, approximately ten years after the mortgages had been consolidated, purchased the property subject to "the first Mortgage of record against the premises." *Id*. at 481. Plotch argued that the original $54,000 mortgage was the first mortgage of record, while Citibank argued that the $92,000 consolidated mortgage was the first mortgage of record. In that case, Plotch maintained "that the phrase first mortgage of record means solely the mortgage recorded earliest in time, and that a consolidated mortgage must therefore be broken down into its component mortgages in order to identify the 'first mortgage of record.'" *Id*. at 482. The Court of Appeals concluded that the consolidated mortgage was the operative mortgage that governed the rights of the parties and did not break the consolidated mortgage down into its constituent parts.

The rationale followed by the New York Court of Appeals applies here—a consolidated mortgage can supersede prior mortgages and become the operative agreement between the parties,

---

[5] I may consider the mortgage documents because plaintiff attached them to the complaint and incorporated them by reference. *See Chambers v. Time Warner, Inc.* 282 F.3d 147, 152-53 (2d Cir. 2002).

8

if that is what their contract so provides. As the Court of Appeals noted, holding otherwise would lead to only additional steps in the consolidation process. *Id.* at 483. ("Banks . . . would simply take additional steps to satisfy the original mortgage, take out a new mortgage, and pay the additional fees required to achieve precisely the same result.") Here, as in *Plotch*, the 2005 CEMA language establishes unequivocally that the three mortgages were consolidated and that the parties intended Wells Fargo to have "one mortgage and [McKenzie to] have one loan obligation." *See* Compl. Ex. C at 5. The Court of Appeals recognized that a CEMA cannot impair or derogate the priorities of any intervening lien between the mortgages being consolidated, but that is not an issue here, as McKenzie and Wells Fargo were the only relevant parties at the time of the 2005 CEMA. In taking possession of the property in 2012, Plotch stepped into the shoes of McKenzie and his obligations to Wells Fargo are coextensive with McKenzie's obligations, which were consolidated into the 2005 CEMA and 2005 Consolidated Mortgage.

Since I have concluded that the 2005 Consolidated Mortgage is the only mortgage relevant to this litigation, the issue arises as to whether plaintiff challenges its validity. He does not. Although he makes various factual allegations regarding the 2005 Mortgage, his delineated legal claims relate only to the 2005 Gap Mortgage, and mortgages from 2001 and 2003. Because the only relevant mortgage is the 2005 Consolidated Mortgage, plaintiff has failed to state a claim and defendant's motion to dismiss is granted on that basis.[6] If plaintiff seeks leave to amend his complaint, he must do so by January 26, 2018.

---

[6] At oral argument, defendant contended that the version of the 2005 Consolidated Mortgage that was attached to the 2005 CEMA as an exhibit is irrelevant, and that the only relevant document is the final version of the 2005 Consolidated Mortgage. Plaintiff argued that the only version of the 2005 Consolidated Mortgage that was properly recorded on the public registry was as an exhibit to the 2005 CEMA. Though I conclude that the 2005 Consolidated Mortgage is the only relevant document, to the extent the only version that was ever recorded was as an exhibit to the

9

**IV. Conclusion**

Defendant's motion to dismiss is granted. Plaintiff is provided until January 26, 2018 to seek leave to amend his complaint.

**SO ORDERED.**

/s/ *Nina Gershon*

**NINA GERSHON**
**United States District Judge**

Dated: January 8, 2018
       Brooklyn, New York

---

2005 CEMA, then the 2005 CEMA may become relevant. If plaintiff seeks leave to amend his complaint, then the parties can address this issue at that time.